# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JUAN MATA, on his own behalf
and as Parent and Next Friend of
J.A.M. and G.M., minors,

       Plaintiff,

vs.                                                  No. CIV 10-0366 JB/LFG

THE CITY OF FARMINGTON,
Farmington Police Department,
a municipality organized under the
laws of the State of New Mexico and
its Police Department;

TYLER RAHN, an Officer of the
Farmington Police Department,
Individually and in his Official Capacity;

ROBERT J. PEREZ, an Officer (Sergeant)
of the Farmington Police Department,
Individually and in his Official Capacity;

JOHN AHLM, an Officer of the
Farmington Police Department,
Individually and in his Official Capacity;

JEFFREY BROWNING, an Officer of the
Farmington Police Department,
Individually and in his Official Capacity;

DANIEL BROZZO, an Officer of the
Farmington Police Department,
Individually and in his Official Capacity;

MIKE BRISENO, a/k/a Mike Briseno,
an Officer of the Farmington Police Department,
Individually and in his Official Capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant Officers' Motion in Limine No. I: The Exclusion of Evidence at Trial Regarding Defendant Officers' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed May 4, 2011 (Doc. 67); and (ii) the Defendant Officers' Motion in Limine No. II: Admissibility of Evidence of Plaintiff's Interactions with the Farmington Police Department, Other Arrests and Violent Encounters to Rebut His Claim for Damages, filed May 5, 2011 (Doc. 68). The Court held a hearing on June 1, 2011. The primary issues are: (i) whether the Court should exclude evidence of police standard operating procedures ("SOPs") and of police training; (ii) whether the Court should exclude evidence that Defendant Tyler Rahn could have used less intrusive alternatives; (iii) whether the Court should exclude evidence of Plaintiff Juan Mata's lawsuits against Farmington Police Department ("FPD") officers and settlements of those lawsuits, and evidence regarding the use of force in prior and subsequent, unrelated incidents, by Rahn and Defendant John Ahlm (hereinafter "the Defendant Officers"), and other officers; and (iv) whether the Court should allow the Defendant Officers to introduce evidence of Mata's interactions with the FPD, other arrests and violent encounters, and his invocation of his Fifth-Amendment privilege at his deposition when asked about the emotional effect of his federal indictment and arrest. The Court will exclude evidence that the Defendant Officers did not follow SOPs and police training, because this evidence is not relevant. The Court will also exclude evidence that Rahn could have used less intrusive alternatives, because this evidence is not relevant. The Court will not allow Mata to present evidence of specific incidents of officers' use of force, internal affairs complaints, or civil rights lawsuits in the context of his excessive force claims, because this evidence does not have a tendency to make the existence of facts of consequence to the determination of these claims more

or less probable, but it will allow Mata to present limited testimony to provide a factual background for this incident.  If, at trial, Mata chooses to pursue his claims for emotional distress and seeks damages for emotional distress, the Court will allow the Defendant Officers to ask witnesses about Mata's interactions with the FPD, his other arrests, and violent encounters in which he has been involved.  If, at trial, Mata pursues damages for emotional distress, the Court will also allow the Defendant Officers to ask whether Mata refused to answer certain questions in his deposition, but they may not refer to invocation of the Fifth-Amendment privilege.

## FACTUAL BACKGROUND

The Court has already discussed the facts underlying this case in detail.  See Memorandum Opinion and Order, filed June 13, 2011 (Doc. 91)("June 13, 2011 MOO").  This case arises out of an incident in which Rahn allegedly used excessive force when he pointed his police revolver at Mata and J.A.M., and Ahlm allegedly violated Mata's and J.A.M.'s constitutional rights by not intervening to prevent Rahn from using excessive force.  The Court will incorporate its discussion of the factual background in pages three to seventeen of the June 13, 2011 MOO and will not repeat that detailed factual context here.

## PROCEDURAL BACKGROUND

On April 15, 2010, Mata filed his Complaint for Civil Rights Violations.  See Doc. 1.  In the Complaint, Mata alleges claims under 42 U.S.C. § 1983.  In Count I, he alleges that Rahn unlawfully used excessive force in violation of the Fourth Amendment.  In Count II, he alleges that Rahn's fellow officers failed to take action to stop Rahn's excessive use of force.  In Count III, he asserts a claim for punitive damages.  In Count IV, he asserts that Defendant City of Farmington is liable, because the "acts and omissions in violation of Plaintiffs' rights by the Defendant Rahn were perpetrated pursuant to the custom and policy of the City of Farmington," and that the City of

Farmington maintains an official policy of permitting its officers to engage in harassing behavior and excessive use of force, or ignores such actions.  Complaint ¶¶ 58-59, at 12-13.  In Count V, he asserts that the City of Farmington is liable, because the "acts and omissions in violation of Plaintiffs' rights by Defendant Rahn were perpetrated pursuant to the custom and policy of the City of Farmington," and the City of Farmington failed to train or supervise Rahn regarding the appropriate handling of situations.  Complaint ¶ 65, at 13-14.  In Count VI, Mata alleges that the City of Farmington is liable for its failure to train and supervise regarding the officers' duty to intervene, and stop the use of excessive force by a fellow officer.

On February 9, 2011, Mata filed the Plaintiff's Notice of Stipulated Dismissal With Prejudice of Defendant Robert Perez Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  See Doc. 42.  On April 14, 2011, Mata filed the Plaintiff's Notice of Stipulated Dismissal With Prejudice of Any and All Against Defendants Jeffrey Browning, Daniel Brozzo, and Michael Briseno Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  See Doc. 56.  Also on April 14, 2011, Mata filed the Plaintiff's Notice of Stipulated Dismissal With Prejudice of Any and All Municipal and Supervisory Liability Claims (Counts IV, V, and VI) Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  See Doc. 57.  In this stipulation, Mata stipulated to the dismissal with prejudice of Counts IV, V, and VI against the City of Farmington, and to the dismissal with prejudice to all "official capacity claims made against" Rahn, Ahlm, and Defendants Robert J. Perez, Jeffrey Browning, Daniel Brozzo, and Michael Briseno.

On June 13, 2011, the Court filed a Memorandum Opinion and Order, granting summary judgment against Mata on his claims against Rahn and Ahlm on G.M.'s behalf, but denying summary judgment on Mata's claims against Rahn and Ahlm on his behalf and J.A.M.'s behalf.  See Doc. 91.  At trial, the jury will decide two claims against the Defendant Officers.  The jury will

decide whether Rahn used excessive force against Mata and J.A.M.  The jury will also decide whether Ahlm failed to intervene and stop Rahn's use of excessive force against Mata and J.A.M.

On May 4, 2011, the Defendant Officers filed the Defendant Officers' Motion in Limine No. I: The Exclusion of Evidence at Trial Regarding Defendant Officers' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training, and Less Intrusive Alternatives.  See Doc. 67.  In their motion, the Defendant Officers request that the Court exclude any and all evidence regarding FPD officers' use of force in prior and subsequent, unrelated incidents, as well as internal affairs complaints, civil rights lawsuits, police SOPs, training and less intrusive alternatives, and that the Court award the Defendant Officers their attorneys' fees and costs and order all other relief the Court deems just and proper.  The Defendant Officers argue that evidence of FPD officers' use of force in prior and subsequent, unrelated incidents, as well as internal affairs complaints, civil rights lawsuits, and civil lawsuit settlements, is irrelevant under rule 402 of the Federal Rules of Evidence.  They argue that this evidence constitutes inadmissible character evidence and evidence of prior bad acts, and that even if the evidence fits within one of rule 404(b)'s exceptions, the Court should exclude the evidence under rule 403.  The Defendant Officers also argue that the Court should exclude any evidence regarding violation of SOPs and training under rule 402, because the evidence is not relevant, or under rule 403, because the evidence creates the danger of jury confusion that substantially outweighs its probative value.

On May 5, 2011, the Defendant Officers filed the Defendant Officers' Motion in Limine No II: Admissibility of Evidence of Plaintiff's Interactions With the Farmington Police Department, Other Arrests and Violent Encounters to Rebut his Claim for Damages.  See Doc. 68.  In this motion, the Defendant Officers seek an order allowing them to introduce evidence of Mata's interactions with the FPD, other arrests and violent encounters, and his invocation of his Fifth-

Amendment privilege at his deposition when asked about the emotional effect of his federal indictment and arrest to rebut his claim for damages.  The Defendant Officers argue that, under rule 404(a)(2), they are permitted to question Mata and other witnesses regarding Mata's interactions with the FPD, other arrests and violent encounters, and his invocation of his Fifth-Amendment privilege at his deposition.  They argue that, under rule 403, the danger of unfair prejudice to Mata does not substantially outweigh the probative value of the evidence.

On May 17, 2011, Mata filed the Plaintiff's Response to Defendant Officers' Motion in Limine No. I: The Exclusion of Evidence at Trial Regarding Defendant Officers' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training, and Less Intrusive Alternatives.  See Doc. 71.  Mata argues that the Court should deny the Defendant Officers' motion in limine, because prior history between FPD officers and Mata is relevant as contextual background.

On May 17, 2011, Mata filed the Plaintiff's Response to Defendant Officers' Motion in Limine No II: Admissibility of Evidence of Plaintiff's Interactions With the Farmington Police Department, Other Arrests and Violent Encounters to Rebut his Claim for Damages.  See Doc. 72. In his response, Mata argues that the Court should not admit the Defendant Officers' evidence, because the unrelated events are not relevant to the matters in litigation, and because admission of the evidence will unfairly prejudice him.

On May 27, 2011, the Defendant Officers filed the Defendant Officers' Reply to Response to Motion in Limine No. I: The Exclusion of Evidence at Trial Regarding Defendant Officers' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training, and Less Intrusive Alternatives.  See Doc. 74.  The Defendant Officers argue that Mata's encounters with FPD officers are not relevant, because, in a case regarding alleged use of excessive

-6-

force, an officer's underlying intent or motive does not enter into the analysis, and because an officer's underlying intent or motive does not enter into the analysis of a failure-to-intervene claim, where the question is whether the officer had a realistic opportunity to intervene to prevent the harm from occurring.

On May 31, 2011, the Defendant Officers filed the Reply in Support of Defendant Officers' Motion in Limine No II: Admissibility of Evidence of Plaintiff's Interactions with the Farmington Police Department, Other Arrests and Violent Encounters to Rebut His Claim for Damages. See Doc. 79. The Defendant Officers argue that to rebut Mata's claims that, as a result of the June 16, 2008 incident, he suffers from post-traumatic stress disorder, anxiety and depression, the Defendant Officers are entitled to introduce evidence of other traumatic and violent events in Mata's life which caused him emotional distress. They argue that these incidents are relevant to Mata's claim that he suffered emotional trauma when Rahn trained his weapon on Mata.

At the hearing, Mata stated that he wished to introduce evidence that Mata and his family have had a lot of bad experiences with the FPD, and that he and his family think the officers are persecuting him. Both parties agreed with the Court's proposal that it would allow him, in his case-in-chief, to introduce his and/or J.A.M.'s testimony that Mata and his family had a lot of bad incidents with the FPD, that they feel as though the FPD is at war with the family, and that they feel that the FPD officers persecute them. Both parties also agreed with the Court's proposal that, if Mata seeks emotional distress damages at trial, then the Defendants can bring out certain incidents to determine whether the incidents were emotionally distressing and whether they contributed to Mata's emotional distress.[1] See Transcript of Hearing at 30:1-12 (taken June 1, 2011)(Juarez,

---

[1] In his deposition, Mata's therapist -- Michael Castenell -- testified that these other incidents would have been events that would have caused a lot of anxiety in Mata's life, and that these

Court)("Tr."); id. at 28:1-29:25 (Robles, Court).[2]  Both parties agreed with the Court's proposal that,

if the Defendant Officers brought out certain incidents Mata could, on cross examination or redirect

examination, explore the details of these incidents and the extent to which the incidents the

Defendant Officers raised are relevant to his damages, but could not raise new incidents.  See Tr.

at 32:19-33:25 (Juarez, Court); id. at 33:25-34:13 (Court, Robles).  Regarding the Fifth-Amendment

issue, the Court stated that it was inclined to allow the Defendant Officers to tell the jury that Mata

did not answer certain questions in his deposition, but that it was not inclined to allow the Defendant

Officers to present evidence to the jury that Mata invoked his Fifth-Amendment privilege.  The

Defendant Officers represented that they believed that the Court's inclination was fair and that they

could draft out questions such that the Court would not find them objectionable.  See Tr. at 38:6-21

(Court, Robles).  Mata also represented that he thought the Court's inclination was fair.  See Tr. at

39:5-11 (Juarez).

### RULE 403 OF THE FEDERAL RULES OF EVIDENCE

Rule 403 provides that, "although relevant, evidence may be excluded if its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

evidence."  Fed. R. Evid. 403.  Unfair prejudice in the rule 403 context "means an undue tendency

---

incidents would have been significant in his treatment of Mata and Mata's children.  See Deposition
of Michael Castenell at 111:8-117:2, 145:2-4 (taken February 11, 2011), filed May 31, 2011 (Doc.
79-3).  In his deposition, Mata stated that other incidents caused him to suffer from post-traumatic
stress disorder, but that the incident at issue in this litigation was the "breaking point."  Deposition
of Juan Mata at 241:6-20 (taken February 3 and 4, 2011), filed May 5, 2011 (Doc. 68-8).  Thus, it
appears that how much this incident contributed and how much other incidents contributed to his
emotional distress will be an issue at trial.

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original,
unedited version.  Any final transcript may have slightly different page and/or line numbers.

to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

Fed. R. Evid. 403 advisory committee's note.  "The burden under Rule 403 is on the party opposing

admission, who must show that the probative value is substantially outweighed by the danger of

unfair prejudice." United States v. Delgado, No. CR 05-920, 2006 U.S. Dist. LEXIS 29150, at *9

(D.N.M. Feb. 10, 2006)(Browning, J.)(quoting United States v. Tse, 375 F.3d 148, 164 (1st Cir.

2004)).  See McEwen v. City of Norman, 926 F.2d 1539, 1549-50 (10th Cir. 1991)(stating that

unfair prejudice "cannot be equated with testimony which is simply unfavorable to a party.  It must

be unfair in the sense that it would be misleading and not aid and assist the jury in making a material

determination in the case.").

## EVIDENCE IN FOURTH-AMENDMENT EXCESSIVE FORCE CLAIMS

The federal courts have developed an extensive body of law regarding the use of excessive

force.  Concomitantly, the federal courts have discussed at length the evidence that can come in such

cases.  For the most part, the federal courts have been restrictive in what evidence plaintiffs can offer

against police officers.

In Graham v. Connor, the Supreme Court of the United States held that all claims under 42

U.S.C. § 1983 in which a law enforcement officer has allegedly used excessive force in the course

of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard.  490

U.S. at 388.  To determine the reasonableness of an officer's use of force, the Supreme Court in

Graham v. Connor stated that the proper application of the "objective reasonableness test" to a use-

of-force case

> requires careful attention to the facts and circumstances of each particular case,
> including the severity of the crime at issue, whether the suspect poses an immediate
> threat to the safety of the officers or others, and whether he is actively resisting arrest
> or attempting to evade arrest by flight.  The "reasonableness" of a particular use of
> force must be judged from the perspective of a reasonable officer on the scene, rather

than with the 20/20 vision of hindsight. . . .  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97 (citations omitted).

### 1.      Rule 404 of the Federal Rules of Evidence and Prior Use of Force.

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Fed. R. Evid. 404(a).  "This rule is necessary because of the high degree of prejudice that inheres in character evidence.  In most instances, [the United States Court of Appeals for the Tenth Circuit is] unwilling to permit a jury to infer that an individual performed the alleged acts based on a particular character trait."  Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(citing rule 404 advisory notes).

Moreover, rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).  To admit other crimes, wrongs, or acts under rule 404(b), the proponent must provide a clear and logical connection between the alleged earlier offense or misconduct, and the case being tried.  See United States v. Hogue, 827 F.2d 660, 662 (10th Cir. 1987)(discussing the inadmissibility of evidence of prior or subsequent bad acts to show action in conformity therewith). A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered.  See United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92

(1988)).

The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence.  See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir. 2005)(holding that the plaintiff failed to satisfy the first factor -- that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167-68 (10th Cir. 2005)(McConnell, J.)(holding that plaintiffs failed to satisfy the second factor -- that evidence of past use of force was relevant).  In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehockey, a K-9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim.  See 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart."  402 F.3d at 1046.  The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b).  See 403 F.3d at 1046.  Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained:

> Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K-9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented.  There was no claim or defense suggesting that [the K-9 officer] accidentally or mistakenly used the police dog.  Indeed, it seems clear that he made a deliberate, conscious decision to do so.  Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.

403 F.3d at 1046(citations omitted).  The Tenth Circuit also noted that the district court's conclusion

-11-

"that such evidence was not relevant under the objective reasonableness standard of <u>Graham v. Connor</u>[, 490 U.S. 386 (1989)] . . . is consistent with the decisions of several other federal appellate courts which have considered similar requests."  402 F.3d at 1047 n.4.

In <u>Tanberg v. Sholtis</u>, the plaintiffs sought to admit evidence that the defendant officer used excessive force or illegally seized suspects in three unrelated cases.  <u>See</u> 401 F.3d at 1167.  The plaintiffs contended that evidence of the officer's other acts of misconduct was "relevant under Fed. R. Evid. 404(b) to show intent and absence of mistake as well as 'consciousness and state of mind.'" 401 F.2d at 1164.  The Tenth Circuit stated: "Because [p]laintiffs' federal claim for excessive force requires assessment of [the officer's] conduct under an objective standard, [p]laintiffs have failed to establish the relevance of evidence tending to shed light on aspects of [the officer's] mental state to this claim."  401 F.3d at 1167-68 (citing <u>Graham v. Connor</u>, 490 U.S. at 397).

In <u>Kampa v. City of Albuquerque</u>, No. CIV 96-1572 LFG/DJS (D.N.M.), the Honorable Lorenzo Garcia, United States Magistrate Judge, explained the problem created by allowing the introduction of unrelated use of force incidents -- other police shootings -- into evidence:

> The danger relating to the introduction of this evidence is apparent.  A fact finder may inappropriately conclude that a person is culpable, not because he committed the act in question, but rather, because he is a bad person, or because at some other time, he committed some other bad act.  Clearly, the Supreme Court and the Tenth Circuit's focus on objective reasonableness requires the fact finder to look at the conduct in question and, based on that, determine whether a violation of the [decedent's] constitutional rights occurred.

<u>Kampa v. City of Albuquerque</u>, No. CIV 96-1572 LFG/DJS, Memorandum Opinion and Order at 4 (D.N.M., filed March 9, 1998)(Doc. 138).

Like the Tenth Circuit, a number of circuit courts agree that a police officer's use of force in a factually unrelated incident is improper rule 404(b) evidence.  <u>See</u> <u>Treece v. Hochstetler</u>, 213 F.3d 360, 363-64 (7th Cir. 2000)(holding that, in a § 1983 suit alleging a police officer demanded

a bribe in exchange for dropping charges against the plaintiff's husband, the officer's prior "bad acts" were insufficient to show modus operandi), cert. denied, 531 U.S. 957 (2000); Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993)(holding that, in a § 1983 excessive force case, the district court erred in allowing the defendant police officer to testify that, in his sixteen-and-one-half years as a police officer, he never shot anyone); Hopson v. Frederickson, 961 F.2d 1374, 1379 (8th Cir. 1992) ("[S]howing a proclivity to engage in conduct is the same as showing a propensity to engage in conduct and both are prohibited by [rule 404(b)]."); Morgan v. City of Marmaduke, Arkansas, 958 F.2d 207, 211 (8th Cir. 1992)(noting that "issues of motive and intent are essentially irrelevant in an excessive force case as the test is an objective one"); Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991)(stating that prior complaints against police offered to show an aggravated state of mind was improper character evidence); Jones v. Hamelman, 869 F.2d 1023, 1027 (7th Cir. 1989)(holding that the district court properly excluded testimony of inmate regarding the callous indifference by prison official toward the protection of inmates because, among other reasons, it did not fit within a rule 404(b) exception); Hirst v. Gertzen, 676 F.2d 1252, 1262 (9th Cir. 1982)(finding that a deputy's prior violent and brutal acts constituted inadmissible character evidence). See also Eigeman v. City of Great Falls, 723 F. Supp. 522, 525 (D. Mont. 1989)(finding that a new trial was not warranted on basis of newly discovered evidence that police officer was involved in a subsequent unrelated incident because such evidence "would serve to take the focus of the jury away from the question of what actually happened at the time of that confrontation, and direct it to the character of the defendant . . . .  This is precisely what Fed. R. Evid. 404 is designed to prohibit.").

The United States District Court for the District of New Mexico has on multiple occasions applied the Graham v. Connor "objective reasonableness" standard and excluded evidence regarding a police officer's use of force in unrelated incidents.  See Chamberlin v. City of Albuquerque, No.

CIV 02-0603 JB/ACT, 2005 WL 2313527, at *1-2 (D.N.M. July 31, 2005)(Browning, J.)(Doc. 143);

Realivasquez v. City of Albuquerque, No. CIV 03-0015 MCA/KBM, Memorandum Opinion and

Order at 8-11 (D.N.M., filed March 8, 2004)(Doc. 73); Tanberg v. Sholtis, No. CIV 02-0348

LCS/LFG, Order on Motions in Limine at 5; Marquez v. Scott, No. CIV 01-0445 WWD/LFG,

Memorandum Opinion and Order at 1-2 (D.N.M., filed September 24, 2002)(Doc. 149); Kampa v.

City of Albuquerque, No. CIV 96-1572 LFG/DJS, Memorandum Opinion and Order at 4 (Doc. 138);

Smith v. Stover, No. CIV 95-1471 JP/WWD, Memorandum Opinion and Order at 2 (D.N.M., filed

December 9, 1997)(Doc. 127).

In Chamberlain v. City of Albuquerque, Luis Robles, the attorney for the police officer, filed

Defendant's Motion in Limine No. II: the Exclusion of Evidence at Trial Regarding the Officers'

Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures,

Training, and Less Intrusive Alternatives.  See 2005 WL 2313527, at *1.  At trial, the plaintiff

alleged that the police officer's use of force against him was unreasonable, violating his Fourth-

Amendment rights.  Through formal and informal discovery, the plaintiff had, or may have had,

obtained information regarding the use of force by certain officers in prior and subsequent, unrelated

incidents, internal-affairs complaints, civil rights lawsuits filed against the officer, and the settlement

of certain civil rights lawsuits brought against the officers.  The police officer moved, pursuant to

rule 104(c) of the Federal Rules of Evidence, asking the Court not to admit certain evidence to

support the plaintiff's claim against him in his individual capacity.  The plaintiff sought to introduce

the jury verdict rendered against the police officer in two cases to demonstrate maliciousness in

support of the plaintiff's punitive damages claim, to show that the plaintiff did not act in good faith,

and for credibility determination purposes.  The plaintiff did not argue that the police officer's bad

acts were relevant to establishing that he violated the "objective reasonableness" standard in Graham

-14-

v. Connor.  Chamberlin v. City of Albuquerque, 2005 WL 2313527, at *1.  The Court precluded the

plaintiff from introducing evidence or testimony about two prior jury verdicts against the police

officer, and the Court would also not allow any evidence pertaining to internal-affairs complaints,

or to other civil rights lawsuits and their settlements.  See 2005 WL 2313527, at *2.  Specifically,

the Court did not admit evidence of the officer's use of force in prior and subsequent, unrelated

incidents, and civil-lawsuit settlements.  See 2005 WL 2313527, at *2.

      **2.**       **Evidence of Least- or Less-Forceful Alternatives in Excessive Force Cases.**

To avoid a "Monday morning quarterback" approach, the Fourth Amendment does not

require the use of the least-, or even a less-, forceful or intrusive alternative to effect custody, so long

as the use of force is reasonable under Graham v. Connor.  The Fourth Amendment requires only

that the defendant officers choose in a "reasonable" method to end the threat that the plaintiff poses

to the officers in a force situation, regardless of the availability of less-intrusive alternatives.

In Michigan Department of State Police v. Sitz, 496 U.S. 444 (1990), the Supreme Court

examined a case reviewing the constitutionality of highway sobriety checkpoints, see 496 U.S. at

450-51, and stated that Brown v. Texas, 443 U.S. 47 (1979),

> was not meant to transfer from politically accountable officials to the courts the
> decision as to which among reasonable alternative law enforcement techniques
> should be employed to deal with a serious public danger.  Experts in police science
> might disagree over which of several methods of apprehending drunken drivers is
> preferable as an ideal.  But for purposes of Fourth Amendment analysis, the choice
> among such reasonable alternatives remains with government officials who have a
> unique understanding of, and a responsibility for, limited public resources, including
> a finite number of police officers.

496 U.S. at 453-54.  See Illinois v. Lafayette, 462 U.S. 640, 647 (1983)("[T]he reasonableness of

any particular government activity does not necessarily turn on the existence of alternative 'less

intrusive' means.").  To avoid unrealistic second guessing, the Fourth Amendment does not require

that an officer use the least-intrusive alternative available to protect himself or others so long as the method chosen is reasonable.

In United States v. Sokolow, 490 U.S. 1 (1989), the Supreme Court examined the Terry[3] stop of a suspected drug courier in an airport. The Supreme Court rejected Sokolow's contention that the arresting officers were "obligated to use the least intrusive means available to dispel their suspicions that he was smuggling narcotics." 490 U.S. at 11. Instead, the Supreme Court held: "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . and require courts to indulge in unrealistic second guessing." 490 U.S. at 11 (internal quotations and citations omitted). In United States v. Sharpe, 470 U.S. 675 (1985), the Supreme Court stated that

> a creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of police might have been accomplished. But "[t]he fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, by itself, render the search unreasonable."

470 U.S. at 686-87 (quoting Cady v. Dombrowski, 413 U.S. 433, 447 (1973)).

In United States v. Marquez, 399 F.3d 1216 (10th Cir. 2005), the Tenth Circuit disagreed with the plaintiff's contention that expert testimony when a police dog's use is objectively reasonable and about how defendant Lehocky's actions violated "well established law enforcement standards . . . should have been admitted since it would have been helpful to the jury in determining whether Lehocky used a reasonable amount of force." 399 F.3d at 1222. In so holding, the Tenth

---

[3] Terry v. Ohio, 392 U.S. 1 (1968)(stating that an officer may conduct a limited seizure of a person when the officer has reasonable suspicion that leads him to believe that criminal activity may be afoot, and that the officer may search the person if the officer has a reasonable belief that the person may be armed and dangerous).

Circuit explained:

> As the district court correctly noted, the Fourth Amendment "do[es] not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994). Similarly, "violations of state law and police procedure generally do not give rise to a 1983 claim" for excessive force. Romero v. Bd. of County Comm'rs, 60 F.3d 702, 705 (10th Cir. 1995); see also Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995)(holding that "violation of a police department regulation is insufficient for liability under section 1983" for excessive force). Both of these principles of our Fourth Amendment jurisprudence stem from the proper perspective from which to evaluate the conduct of a police officer -- that "of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." Olsen [v. Layton Hills Mall], 312 F.3d [1304,] 1314 [(10th Cir. 2002)]. Together, they prevent the courts from engaging in "unrealistic second guessing of police officer's decisions." [United States v.] Melendez-Garcia, 28 F.3d at 1052.
>
> Here, the only issue before the jury was whether Lehocky acted as a "reasonable officer" when he ordered his police dog to apprehend Marquez. In making this determination, the issues of whether Lehocky used the minimum amount of force to apprehend Marquez and whether Lehocky violated some "well established police procedure" are only tangentially related. This is because even if it found Lehocky used more than the minimum amount of force necessary and violated police procedure, the jury could nonetheless find he acted reasonably. [United States v.] Melendez-Garcia, 28 F.3d at 1052; Romero [v. Bd. of County Comm'rs, 60 F.3d at 705].

United States v. Marquez, 399 F.3d at 1222.

In United States v. Melendez-Garcia, 28 F.3d 1046 (10th Cir. 1994), the Tenth Circuit stated: "We must avoid unrealistic second guessing of police officers decisions in this regard and thus do not require them to use the least intrusive means in the course of a detention, only a reasonable ones." 28 F.3d at 1052 (internal quotations omitted). The Tenth Circuit explained that the Fourth Amendment "do[es] not require [police officers] to use the least intrusive means in the course of a detention, only reasonable ones." United States v. Melendez-Garcia, 28 F.3d at 1052. See Medina v. Cram, 252 F.3d at 1133 (stating that "the reasonableness standard does not require that officers use alternative less intrusive means.")(quotation and citation omitted); Dickerson v. McClellan, 101

F.3d 1151, 1160 (6th Cir. 1996)("[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances."); Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994)("We do not believe the Fourth Amendment requires the use of the least or even a less deadly alternative so long as the use of force is reasonable under Tennessee v. Garner, 471 U.S. 1 (1985) and Graham v. Connor."), cert. denied, 513 U.S. 820 (1994); Schultz v. Long, 44 F.3d 643, 649 (8th Cir. 1995)("[T]he Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within the range of conduct which is objectively 'reasonable' under the Fourth Amendment."); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)("Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. . . . Officers thus need not avail themselves of the least intrusive means of responding to an exigent situations; they need only act within that range of conduct we identify as reasonable."), cert. denied, 515 U.S. 1159 (1994); Menuel v. City of Atlanta, 25 F.3d 990, 996-97 (11th Cir. 1994)("[T]he Fourth Amendment does not require officers to use the least intrusive alternatives in search and seizure cases.  The only test is whether what the police officers actually did was reasonable.").  In V-1 Oil, Co. v. Means, 94 F.3d 1420 (10th Cir. 1996), the Tenth Circuit stated: "Police are not required to use the least intrusive means in the course of a stop, only reasonable means."  94 F.3d at 1427.  See Diaz v. Salazar, 924 F. Supp. 1088, 1100 (D.N.M. 1996)(Hansen, J.)("I agree with Defendant City that police are not constitutionally required to carry certain weapons, such as mace, nor are they constitutionally required to respond to a suspect's threat of force with non-force or the least intrusive amount of force.").

Thus, the clearly established law in the Tenth Circuit holds that the Fourth Amendment does not require an officer to use the least or a less forceful alternative.  See, e.g., Blossom v. Yarbrough,

429 F.3d 963, 968 (10th Cir. 2005)(quoting Medina v. Cram, 252 F.3d at 1133)("It is well settled that 'the reasonableness standard does not require that officers use alternative, less intrusive means' when confronted with a threat of serious bodily injury."); Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004)(stating that, in a police-shooting case, officers are not required to use alternative, less intrusive means if their conduct is objectively reasonable).   See also Roy v. Inhabitants of the City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994)("[I]n close cases, a jury does not automatically get to second guess these life and death decisions, even though plaintiff has an expert and a plausible claim that the situation could better have been handled differently."); Diaz v. Salazar, 924 F. Supp. at 1100.

This rule, that the Fourth Amendment does not require an officer to use less forceful alternatives, has consequences on the evidence that the trial court may admit.  So long as the force used by the officer is reasonable, the clearly established Fourth-Amendment case law rejects the consideration of a less intrusive alternative to end the immediate threat to him or herself, his or her fellow officers, or members of the public, that the plaintiff posed.   In Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005), the Tenth Circuit pointed out:

> The only issue before the jury was whether [the defendant officer] acted as a "reasonable officer" when he [used force against a suspect].  In making this determination, the issues of whether [the defendant officer] used the minimum amount of force to apprehend [the suspect] and whether [the defendant officer] violated some "well established police procedure" are only tangentially related. This is because even if it found [the defendant officer] used more then than the minimum amount of force necessary and violated police procedure, the jury could nonetheless find he acted reasonably.

399 F.3d at 1221 (citation and footnote omitted).

In Medina v. Cram, the Tenth Circuit rejected the consideration of a less intrusive alternative to end a threat:

> Moreover, the reasonableness standard does not require that officers use "alternative 'less intrusive' means." Illinois v. Lafayette, 462 U.S. 640, 647-48 . . . (1983). If we were to follow the dissent's approach and consider the expert's assertions regarding the failure to use pepper spray and other tactical measures, we would be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene.

Medina v. Cram, 252 F.3d at 1133. This District has also rejected the consideration of a less intrusive alternative to end a threat. See Chamberlain v. City of Albuquerque, 2005 WL 2313527, at *2 (Browning, J.)(precluding the plaintiff's police procedures expert from testifying at trial regarding alternative less intrusive means); Taylor v. Hudson, No. CIV 02-0775, 2003 U.S. Dist. LEXIS 26736, at *18 (D.N.M. Nov. 25, 2006)(Browning, J.)(excluding any SOP evidence related to less intrusive alternatives to the amount of force used against plaintiff); Tanberg v. Sholtis, No. CIV 02-0348 LCS/LFG, Memorandum Opinion and Order at 7-8 (finding that evidence as to the use of less intrusive alternatives to the use of force is not relevant to the plaintiffs' constitutional claims against the officer).

In Taylor v. Hudson, the Court stated: "[E]vidence of less intrusive alternatives is irrelevant to the Fourth Amendment reasonableness inquiry and thus inadmissibility." 2003 U.S. Dist. LEXIS 26736, at *18. In Chamberlain v. City of Albuquerque, the Court, relying on Marquez v. City of Albuquerque and United States v. Melendez-Garcia, excluded any evidence of SOPs regarding lesser intrusive alternative methods of force. See 2005 U.S. Dist. LEXIS 21910, at *2.

## SOPs IN CIVIL RIGHTS CASES

In Whren v. United States, 517 U.S. 806 (1996), the Supreme Court examined the application of SOPs to traffic-stop cases as a method by which a court could determine if an officer made a pretextual stop. See 517 U.S. at 813-14. In concluding that the Fourth Amendment's reasonableness requirement "allows certain actions to be taken in certain circumstances, whatever

the subjective intent," the Supreme Court stated:

> Indeed, it seems to us somewhat easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a "reasonable officer" would have moved to act upon a traffic violation. While police manuals and standard procedures may sometimes provide objective assistance, ordinarily one would be reduced to speculating about the hypothetical reaction of a hypothetical constable – an exercise that might be called virtual subjectivity.
>
> Moreover, police enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be turned upon trivialities.

517 U.S. at 815 (citations omitted). See United States v. Botero-Ospina, 71 F.3d 783, 787-88 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1999).

The Supreme Court has stated that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provisions." Davis v. Scherer, 468 U.S. 183, 194 (1984)(footnote omitted). Consistent with other circuit courts, the Tenth Circuit holds that the violation of state law and SOPs will not turn an otherwise constitutional use of force into a violation of § 1983. See Tanberg v. Sholtis, 401 F.3d at 1167 ("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo."); Medina v. Cram, 252 F.3d at 1133 (excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices" because "claims based on violations of state law and police procedure are not actionable under § 1983."); Romero v. Bd. of County Comr's of County Lake, 60 F.3d 702, 704 (10th Cir. 1995)("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.")(citations omitted), cert. denied, 516 U.S. 1073 (1996); Wilson v. Meeks, 52 F.3d at 1554 ("[V]iolation of a police department regulation is insufficient for liability under

section 1983."). <u>See</u> <u>also</u> <u>Greenridge v. Ruffin</u>, 927 F.2d 789, 792 (4th Cir. 1991)(upholding the

trial court's decision to exclude officer's failure to follow standard arrest procedures because it was

not relevant to whether the officer acted reasonably in using force); <u>Diaz v. Salazar</u>, 924 F. Supp.

at 1097 ("The fact that their conduct may not have conformed with police regulations or training

does not operate to create constitutional liability under Section 1983."); <u>Marquez v. Scott</u>, No. CIV

01-0445 WWD/LFG, Memorandum Opinion and Order at 2 ("The fact that Lehocky's conduct may

not have conformed with police regulations or operating procedures does not operate to create

constitutional liability under Section 1983.").

The clearly established law also does not permit a plaintiff to establish a constitutional

violation with evidence that the officers violated SOPs and their training. The clearly established

law requires the exclusion of any evidence regarding the violation of SOPs and training, because

such evidence is irrelevant to the Fourth-Amendment inquiry. In <u>Tanberg v. Sholtis</u>, the Tenth

Circuit discussed the propriety of admitting SOPs as evidence of a constitutional violation in an

excessive force, and an assault and battery, case. The Tenth Circuit held that the proffered SOP was

irrelevant to the issues in the case:

> In the exclusionary rule context, the Supreme Court has rejected the use of local
> police regulations as a standard for evaluating constitutionality of police conduct, on
> the ground that such a "basis of invalidation would not apply in jurisdictions that had
> a different practice." <u>Whren v. United States</u>, 517 U.S. 806, 815 (1996). That logic
> would seem to apply equally to damage suits under § 1983. This Court has
> consistently held that the violation of police regulations is insufficient to ground a
> § 1983 action for excessive force. <u>Marquez v. City of Albuquerque</u>, 399 F.3d 1216
> (10th Cir. 2005); <u>Medina[ v. Cram]</u>, 252 F.3d at 1133; <u>Romero v. B[]d[.] of County
> Com[m]'rs of County of lake, State of Colo.</u>, 60 F.3d 702, 705 (10th Cir. 1995);
> <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1554 (10th Cir. 1995). . . . That an arrest violated
> police department procedures does not make it more or less likely that the arrest
> implicates the Fourth Amendment, and evidence of the violation is therefor
> irrelevant. If Officer Sholtis violated the SOP governing the use of force in effecting
> arrest, that fact might well be pertinent to the Albuquerque Police Department's
> future decisions to promote, retain, or discipline him; it is not relevant to determining

if Plaintiff's arrest violated the reasonableness requirement of the Fourth Amendment.

Tanberg v. Sholtis, 401 F.3d at 1163-64.  As the Tenth Circuit explained:

> Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties.  Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima.  If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this  would create a disincentive to adopt progressive standards.  Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

401 F.3d at 1164.

In Medina v. Cram, the Tenth Circuit reviewed the relevance of SOPs to a Fourth-Amendment excessive force claim.  The police responded to a call regarding Medina's refusal to return to jail on a bail bond violation and statement that he was armed with a gun.  See 252 F.3d at 1126.  After their arrival, the police tried to convince Medina to leave his house peacefully.  See id. Instead, Medina told the officers that he needed more time, was suicidal, and was armed with a handgun.  See 252 F.3d at 1126.  Ultimately, Medina "emerged from the house with his left hand in a cup and his right hand wrapped in a towel concealing a staple gun, which Mr. Medina intended as a representation of a weapon." 252 F.3d at 1126.  Although ordered to stop, Medina "walked" toward and onto the street.  Id.  The officers' use of bean-bag rounds did not stop Medina's movement.  See id.  After the bean-bag rounds failed to stop Medina, "an officer released an attack dog, which bit [Medina] and released, returning to the officer." Id.  The "attack dog was released a second time," causing Medina to drop to the ground and expose the staple gun.  Id.  As he dropped to the ground, Medina pointed the staple gun in the direction of other officers.  See id.  Two officers shot Medina five times.  See id.

-23-

In response to the officers' assertion of qualified immunity, Medina submitted an affidavit of an expert who opined that the officers' use of force did not conform with accepted police guidelines and practices, and was therefore excessive.  See 252 F.3d at 1133.  The expert's affidavit did not persuade the Tenth Circuit:

> We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983.  Romero [v. Bd of County Comm'rs], 60 F.3d at 705 (state law and police procedure); Wilson [v. Meeks], 52 F.3d at 1554 (police department regulation); see also Davis v. Scherer, 468 U.S. 183, 194-96 (1984)(rejecting the argument that § 1983 liability may be based solely on a violation of a state statute or regulation).

Medina v. Cram, 252 F.3d at 1133.

In the various cases in which the courts in the District of New Mexico addressed this issue, most, and all recent, cases have ruled that evidence regarding the violation of police procedure is not admissible in a § 1983 excessive force case.  See Chamberlain v. City of Albuquerque, 2005 U.S. Dist. LEXIS 21910, at *1-2 (Browning, J.)("[U]nder United States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs is irrelevant to whether [defendant officer] acted objectively reasonably.  Accordingly, the Court will preclude [plaintiff] from offering testimony or evidence about SOPs on his § 1983 claim."); Realivasquez v. City of Albuquerque, No. CIV 03-0015 MCA/KBM, Memorandum Opinion and Order at 4-5 ("[T]he Court concludes that the parties may not use evidence of standard operating procedures in order to supplant the test of objective reasonableness that has been defined by the Supreme Court and the Tenth Circuit."); Tanberg v. Sholtis, No. CIV 02-0348 LCS/LFG, Memorandum Opinion and Order at 6-8 (D.N.M. June 6, 2003)(Doc. 146)(holding that "evidence of the standard operating procedures and any violation thereof is not relevant to the excessive force claim"); Smith v. Stover, No. CIV 95-1471 JP/WWD, Memorandum Opinion and Order at 3-5 (D.N.M. December 9, 1997)(Doc. 127); Kampa v. City of

Albuquerque, No. CIV 96-1572 LFG/DJS, Memorandum Opinion and Order at 4 ("[T]he violation

of police procedure in and of itself is not constitutionally significant.").

In Taylor v. Hudson, 2003 U.S. Dist. LEXIS 26736, at *16, which was decided before the

Tenth Circuit's decisions in Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005), the

Court opined:  "The use of SOP evidence with respect to the reasonableness of the amount of force

actually used in effecting the arrest implicates the rule of law that a violation of police procedures

cannot serve as the basis for a constitutional violation."  Taylor v. Hudson, 2003 U.S. Dist. LEXIS

26736, at *16.  In Chamberlain v. City of Albuquerque, the primary issue was whether the Court

should allow the plaintiff, Chamberlain, to introduce the Albuquerque Police Department's SOPs.

See 2005 U.S. Dist. LEXIS 21910, at *1-2.  Because of two recent Tenth Circuit decisions, the Court

granted Lehocky's motion.  The Court, after reviewing the two recent decisions pertaining to SOP

admissibility that the Tenth Circuit decided after the Court's decision in Taylor v. Hudson --

Tanberg v. Sholtis and Marquez v. City of Albuquerque -- excluded any evidence or testimony

pertaining to SOPs.  The Court stated that, in light of these recent Tenth Circuit decisions, and in

light of those holdings, it would not allow the plaintiff to offer evidence or testimony of the

Albuquerque Police Department's SOPs.  In light of the recent Tenth Circuit precedent, the Court,

contrary to its decision in Taylor v. Hudson, held that the plaintiff could not introduce the

Albuquerque Police Department's SOPs to support the allegation that Lehocky acted unreasonably

in directing his police service dog to attack the plaintiff in violation of his Fourth-Amendment

rights.  See 2005 U.S. Dist. LEXIS 21910, at *2.  Specifically, the Court would not allow the

plaintiff to introduce SOPs that he had provided to the Court on Use of Force, Use of Canines,

Response to the Mentally Ill/Suspected Mentally Ill, and Rights of Onlookers.  See id.

The Court in Chamberlain v. City of Albuquerque acknowledged that, although both of the

Tenth Circuit decisions were distinguishable from the facts in Chamberlain v. City of Albuquerque in that the SOPs which the plaintiff sought to introduce in Chamberlain v. City of Albuquerque were different than those at issue in the two Tenth Circuit cases, and that, unlike Tanberg v. Sholtis, there was no suggestion that the plaintiff in Chamberlain v. City of Albuquerque also sought to introduce testimony whether the police department disciplined Lehocky for violating any SOP, the Tenth Circuit cases' language was sufficiently broad and sweeping to encompass the SOPs at issue in Chamberlain v. City of Albuquerque.  The Court stated that, under United States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs was irrelevant to whether Lehocky acted objectively reasonably.  Accordingly, the Court precluded the plaintiff from offering testimony or evidence about the SOPs on his § 1983 claim.

## ANALYSIS

The Court will grant in part and deny in part the Defendant Officers' motions in limine.  The Court will exclude evidence that the Defendant Officers did not follow SOPs and police training, because this evidence is not relevant.  The Court will also exclude evidence that Rahn could have used less intrusive alternatives, because this evidence is not relevant.  The Court will not allow Mata to present evidence of specific incidents of FPD officers' use of force, internal-affairs complaints, or civil rights lawsuits in the context of his excessive force claims, because this evidence does not, as a matter of law, have a tendency to make the existence of facts of consequence to the determination of this claim more or less probable, but it will allow Mata to present limited testimony to provide a factual background for this incident at issue in this litigation.  If, at trial, Mata chooses to pursue his claims for emotional distress and seeks damages for emotional distress, the Court will allow the Defendant Officers to ask about Mata's interactions with the FPD, his other arrests, and violent encounters in which he has been involved.  If, at trial, Mata chooses to pursue damages for

emotional distress, the Court will also allow the Defendant Officers to ask whether Mata refused to answer certain questions in his deposition, but they may not refer to his invocation of the Fifth-Amendment privilege.  Because the Court will not grant the Defendant Officers' motions in limine in their entirety, and for other reasons, it will not award the Defendants Officers attorneys fees and costs.[4]

## I.   THE COURT WILL EXCLUDE EVIDENCE OF SOPS AND POLICE TRAINING.

The Court will exclude any evidence that the Defendant Officers did not follow the FPD's or other generally accepted SOPs and police training.  As the Court stated in Jones v. Board of Commissioners of Luna County, 699 F. Supp. 2d 1284 (D.N.M. 2010): "The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training.  The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth-Amendment inquiry."  699 F. Supp. 2d at 1299 (discussing Tanberg v. Sholtis and Medina v. Cram).  Given the controlling law, the Court finds that evidence of violations of SOPs and training is irrelevant to whether Mata's and J.A.M.'s rights under the Fourth Amendment were violated.  See Tanberg v. Sholtis, 401 F.3d at 1163-64 ("That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefor irrelevant.").  Because this evidence is not relevant, the Court finds that this evidence is "not admissible," and the Court will exclude this evidence.  Fed.

_____

[4] In the Defendant Officers Motion in Limine No. I, they ask for attorneys' fees and costs. "It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."  Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 415 (1978).  The Defendant Officers have not directed the Court's attention to legislation providing for their attorneys' fees and costs for winning a motion in limine.  The Court therefore will not award them attorneys' fees and costs.

R. Evid. 402.

## II.    THE COURT WILL EXCLUDE EVIDENCE THAT RAHN COULD HAVE USED LESS INTRUSIVE ALTERNATIVES.

The Court will exclude evidence that Rahn could have used a less intrusive alternative to the

force he used.  As this Court has stated:

> This rule, that the Fourth Amendment does not require an officer to use less forceful
> alternatives, has consequences on the evidence that the trial court may admit.  So
> long as the force used by the officer is reasonable, the clearly established
> Fourth-Amendment case law rejects the consideration of a less intrusive alternative
> to end the immediate threat to him or herself, his or her fellow officers, or members
> of the public, that the plaintiff posed.

Jonas v. Bd. of County Comm'rs of Luna County, 699 F. Supp. 2d at 1296 (discussing Marquez v.

City of Albuquerque and Medina v. Cram).  Evidence that the Defendant Officers could have used

less intrusive alternatives is not relevant, because Fourth-Amendment case law rejects consideration

of a less intrusive alternative as long as Rahn used reasonable force.  See Marquez v. City of

Albuquerque, 399 F.3d at 1221; Taylor v. Hudson, 2003 U.S. Dist. LEXIS 26736, at *18

("[E]vidence of less intrusive alternatives is irrelevant to the Fourth Amendment reasonableness

inquiry and thus inadmissibility.").  Because this evidence is not relevant, the Court finds that this

evidence is "not admissible," and the Court will exclude this evidence.  Fed. R. Evid. 402.

## III.   THE COURT WILL NOT ALLOW MATA TO PRESENT EVIDENCE OF SPECIFIC INCIDENTS OF OFFICERS' USE OF FORCE, INTERNAL-AFFAIRS COMPLAINTS, AND CIVIL RIGHTS LAWSUITS IN THE CONTEXT OF HIS EXCESSIVE FORCE CLAIMS, BUT IT WILL ALLOW HIM TO PRESENT LIMITED TESTIMONY TO PROVIDE FACTUAL BACKGROUND FOR THE INCIDENT AT ISSUE IN THIS LITIGATION.

The Court will limit Mata's introduction of evidence of specific incidents of FPD officers'

use of force, internal-affairs complaints, and civil rights lawsuits, but will allow limited testimony

providing a factual background for the incident at issue in this litigation.  In Graham v. Connor, the

Supreme Court held that excessive force claims are "analyzed under the Fourth Amendment's 'objective reasonableness' standard."  490 U.S. at 388.  "This standard is an objective one to which an officer's personal motivations in using a particular degree of force are irrelevant: '[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.'"  Tanberg v. Sholtis, 401 F.3d at 1168 (citation omitted).  In Tanberg v. Sholtis, the Tenth Circuit precluded evidence of other occasions when the defendant officer allegedly arrested individuals without probable cause or used excessive force, proffered under rule 404(b) to show intent and absence of mistake, because the plaintiffs' "federal claim for excessive force require[d] assessment of [the officer's] conduct under an objective standard, Plaintiffs have failed to establish the relevance of evidence tending to shed light on aspects of Officer Sholtis's mental state to this claim."  401 F.3d at 1151.  Under the controlling law, the Court finds that evidence of specific incidents of FPD officers' use of force, internal-affairs complaints, and civil rights lawsuits are not relevant to the question whether Rahn violated Mata's and J.A.M.'s constitutional rights by using excessive force.  Unlike Tanberg v. Sholtis, however, where the evidence that the defendant officer allegedly used excessive force in other incidents related to conduct against third-parties and not to the plaintiffs, the alleged incidents in this case involve alleged conduct against Mata and his family.  The Court thus believes that, while the alleged incidents against Mata and his family should not be presented in support of Mata's excessive force claims on his behalf and on J.A.M.'s behalf, these alleged incidents provide a background for the incident at issue in this litigation, which will help the jury to understand the events.  The videos taken by the FPD officers' dashboard camera depict Mata's son taunting the officers and using coarse language.  The Court is concerned that, without a factual context, Mata's son's conduct could be seen as unduly provoking and uncivil to a police

officer.  At the hearing, the Court mentioned redacting Mata's son's statement, or excluding his statement, but the Defendant Officers replied that they would then be left with having to explain why so many police officer arrived at the house.  The Court is attempting to prevent the jury getting an unfair picture of either side, without undercutting the Tenth Circuit's ban on evidence of prior, unrelated incidents in excessive force cases.  Because the Defendants did not wish to redact or exclude the statement, Mata should be able to explain why his son was acting in the way he did.  To allow Mata to introduce specific incidents would undermine the Tenth Circuit's proscription of evidence of prior, unrelated incidents, but some limited testimony setting a contextual background will help Mata deal with the prejudice of his and his son's actions.  The Court will thus allow limited introduction of evidence to provide a context for the incident at issue in this litigation.  See United States v. Condrin, 473 F.3d 1283, 1286 n.2 (10th Cir. 2007)("Background evidence 'is universally offered and admitted as an aid to understanding.'" (citing Fed. R. Evid. 401 advisory committee's note)).

In this case, to not allow Mata to offer some background will raise more issues in the jury's mind than providing some general background -- without specifics -- will do.  The questions in the jury's mind will probably be unfavorable to Mata, even with some background.  The public generally respects police officers and does not approve of trash talking to them.  Thus, without some context, Mata's and his son's actions appear particularly rude.  The Court will allow Mata and J.A.M. to testify that Mata and his family have had incidents with the FPD, that they think the FPD are persecuting them, and that they believe that their family and the FPD are in a kind of war.  This general evidence is relevant, because it will shed light on the context in which the incident occurred.  See Fed. R. Evid. 401.  It explains certain actions taken by persons -- especially Mata's son -- captured on the officers' dashboard cameras.  For example, the dashcam video camera's captured

Mata's son taunting the officers and using coarse language.  Given the long-standing war between the FPD and the Mata family, his behavior is more understandable; without the background, the actions and statements appear completely uncalled for, unnecessary, and unprovoked.  Furthermore, this testimony is not of so little relevance that the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs its probative value.  <u>See</u> Fed. R. Evid. 403.  The proper jury instructions -- telling the jury for what the evidence can be used and for what it cannot be used -- will help ensure that this evidence will not mislead or confuse the jury.[5]  The Court thus will not allow Mata to present this evidence in the context of his excessive force claims, but it will allow Mata to present limited testimony to provide a factual background for the incident which led to this litigation.  At the hearing, both parties agreed with the Court's proposal -- that it would allow Mata to introduce limited evidence regarding the long-standing war between the FPD and his family, and his family's feelings of persecution.  <u>See</u> Tr. at 28:23-24 (Robles)("That, I think, would be a fair resolution . . . .");Tr. at 30:7-12 (Court, Juarez)(stating that this proposal allowed Mata the context he needs without going into the details).

## IV.   IF, AT TRIAL, MATA CHOOSES TO CONTINUE TO PURSUE HIS CLAIMS FOR EMOTIONAL DISTRESS AND SEEKS DAMAGES FOR EMOTIONAL DISTRESS, THE DEFENDANTS MAY ASK ABOUT SPECIFIC INCIDENTS REGARDING MATA'S INTERACTIONS WITH THE FPD, OTHER ARRESTS, AND VIOLENT ENCOUNTERS IN WHICH HE HAS BEEN INVOLVED.

The Defendant Officers ask the Court to allow them to inquire at trial about Mata's interactions with the FPD, other arrests, and violent encounters in which he has been involved.  They contend that rule 405(b) permits such an inquiry, because these incidents are relevant to the issue

---

[5] The Court will give a limiting instruction on the Defendant Officers' request.  The Defendant Officers should draft the proposed instruction, present the instruction to Mata for his review and comment well before its desired use, and tell the Court precisely when they want it given.

of Mata's claims for damages.  Rule 405(b) of the Federal Rules of Evidence provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct."  Fed. R. Evid. 405(b).  "Character is directly in issue in the strict sense when it is 'a material fact that under the substantive law determines rights and liabilities of the parties.'"  Perrin v. Anderson, 784 F.2d 1040, 1045 (10th Cir. 1986)(quoting E. Cleary, McCormick on Evidence § 187, at 551 (3d ed. 1984)).

In Chamberlin v. City of Albuquerque, the Court stated: "Because Chamberlin's uncharged misconduct, drug and alcohol abuse, and mental illness is relevant to rebut Chamberlin's claim of damages, the Court will allow Lehocky to introduce certain specific instances of Chamberlin's prior conduct."  Memorandum Opinion and Order at 3.

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Fed. R. Evid. 404(a).  "This rule is necessary because of the high degree of prejudice that inheres in character evidence.  In most instances, [the United States Court of Appeals for the Tenth Circuit is] unwilling to permit a jury to infer that an individual performed the alleged acts based on a particular character trait."  Perrin v. Anderson, 784 F.2d at 1044 (citing rule 404 advisory notes).

Moreover, rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  To admit other crimes, wrongs, or acts under rule 404(b), the proponent must provide a clear and logical connection between the alleged earlier offense or misconduct, and the case being tried.  See United States v. Hogue, 827 F.2d at 662 (discussing the inadmissibility of evidence of prior or subsequent bad acts to show action in conformity therewith).  A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii)

the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered.  See United States v. Hardwell, 80 F.3d at 1488 (citing Huddleston v. United States, 485 U.S. at 691-92).

If Mata presents evidence to support his claims for damages, the Court will allow the Defendant Officers to question Mata and his witnesses regarding Mata's other interactions with the FPD, arrests, and violent encounters.  The Court finds that this evidence is admissible 404(b) evidence, so it need not address whether the evidence would come in under rule 405(b).

This evidence is introduced for a proper purpose, and the Defendant Officer have with precision articulated the purpose for which they offer the evidence.  The Defendant Officers do not wish to introduce this evidence to show that Mata acted violently in the incident at issue in this litigation.  They wish to introduce the evidence to contest Mata's asserted emotional distress damages.  Admission of this evidence to assist the jury in measuring the extent of Mata's damages is a legitimate, non-character based use of the evidence.  See Udemba v. Nicoli, 237 F.3d 8, 15 (1st Cir. 2001)(stating that the "admission of evidence of other bad acts to assist the jury in measuring the extent of damages is a legitimate, non-character-based use of such evidence").

This evidence has the tendency to make the existence of Mata's entitlement to emotional distress damages because of the incident at issue in this case more or less probable than it would be without the evidence, and, although this evidence may prejudice Mata, the Court does not believe that any prejudice to Mata would substantially outweigh the probative value of this evidence.  See Udemba v. Nicoli, 237 F.3d at 15 (addressing evidentiary issues in a case alleging excessive force under 42 U.S.C. § 1983 and affirming district court's finding that evidence was relevant to a contested issue in the case -- the extent of damages attributable to emotional distress); Gates v.

-33-

Rivera, 993 F.2d at 700 ("Restricted to the issue of damages, the questions as to McGensey's use of drugs were proper, and the district court had discretion to admit them as probative and not unduly prejudicial."); Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986)(finding that the district court did not commit reversible err in admitting evidence of past drug use and arrests when the evidence was probative in aiding the jury fairly measure the extent of damages for the alleged excessive force claim and that its prejudicial effect did not substantially outweigh its probative value); Chamberlin v. City of Albuquerque, Memorandum Opinion and Order at 3-8.

The potential for unfair prejudice does not substantially outweigh the probative value of the evidence. The Court will limit any prejudice that the evidence raises by allowing Mata, on re-direct or cross examination, to explain why he believes that those incidents that the Defendant Officers have raised do not eliminate or reduce the emotional distress damages which he seeks. Mata may be able to go into details of the incidents that the Defendant Officers raised, even if the Defendant Officers did not elaborate the details. Mata cannot, however, raise new incidents. The Court thus believes that the possibility of unfair prejudice does not outweigh the evidence's probative value.

## V.    IF, AT TRIAL, MATA CHOOSES TO CONTINUE TO PURSUE HIS CLAIMS FOR EMOTIONAL DISTRESS AND SEEKS DAMAGES FOR EMOTIONAL DISTRESS, THE DEFENDANTS MAY ASK WHETHER MATA REFUSED TO ANSWER CERTAIN QUESTIONS IN HIS DEPOSITION, BUT THEY MAY NOT REFER TO MATA INVOKING HIS FIFTH-AMENDMENT PRIVILEGE TO AVOID SELF-INCRIMINATION.

Mata "unquestionably may assert a Fifth Amendment privilege in this civil case and refuse to reveal information properly subject to the privilege . . . ." Mid-America's Process Serv. v. Ellison, 767 F.2d 684, 686 (10th Cir.1985)(citing United States v. Kordel, 397 U.S. 1, 7-8 (1970)). The Supreme Court has stated that the Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no

penalty . . . for such silence." Spevack v. Klein, 385 U.S. 511, 514 n.2 (1967)(quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)). The concept of "penalty" includes "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" Spevack v. Klein, 385 U.S. at 515 (quoting Griffin v. California, 380 U.S. 609, 614 (1965)). "By asserting his Fifth Amendment privilege in this civil case, [Mata] 'may have to accept certain bad consequences that flow from that action.'" Chamberlin v. City of Albuquerque, No. CIV 02-603 JB/ACT, 2003 WL 24130247, at *3 (D.N.M. Dec. 3, 2003)(citing Mid-America's Process Serv. v. Ellison, 767 F.2d at 686). Put simply, "a civil plaintiff has no absolute right to both his silence and his lawsuit." Wehling v. Columbia Broad. Sys., 608 F.2d at 1088. A number of courts acknowledge the court's power to dismiss a plaintiff's civil case even in the face of a party's proper assertion of his or her Fifth Amendment right. See, e.g., Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1087 n.6 (5th Cir. 1979)("While dismissal is unavailable as a Sanction, the . . . court is not precluded from using dismissal as a Remedy to prevent unfairness to the defendant. . . . [D]ismissal may only be used as a remedy . . . where the plaintiff's refusal to submit to discovery is based on his exercise of a constitutional right."); Lyons v. Johnson, 415 F.2d 540, 542 (9th Cir. 1969)(stating that "[t]he scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim"; that "[i]f any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion"; and that it must affirm "the dismissals of both of appellant's actions"); Mt. Vernon Sav. & Loan v. Partridge Assocs., 679 F. Supp. 522, 529 (D. Md. 1987)("[I]t is well established that it is proper to dismiss the claim of a plaintiff who exercises his privilege against self-incrimination

to refuse to answer questions related to the issues involved in the litigation which he has instituted."); Stop & Shop Cos. v. Interstate Cigar Co., 110 F.R.D. 105, 108 (D. Mass. 1986)("In the situation where a plaintiff validly invokes the privilege against self-incrimination, the Court has the power to dismiss the Complaint despite the fact that the plaintiff has not disobeyed an order compelling discovery issued pursuant to Rule 37, F.R.Civ.P.").

In Lyons v. Johnson, the United States Court of Appeals for the Ninth Circuit affirmed the dismissals of the appellant's actions. See 415 F.2d at 542. The appellant filed civil rights damage actions under 42 U.S.C. §§ 1983 and 1985. See 415 F.2d at 540. The Ninth Circuit stated:

> One of the suits was against a California deputy district attorney, some police officers and other persons. The other suit was against a magistrate of a municipal court and an attorney appointed to represent or assist appellant in some misdemeanor charges on which proceedings had been suspended for a time under § 1368 of the California Penal Code ('a doubt * * * as to the sanity of the defendant'). From the implications of the complaints, appellant was after hospital examination apparently deemed not to lack capacity to stand trial. Both complaints sought damages for conspiracy and acts, alleged to have been engaged in against appellant, which were recognized by her as having been separate but apparently regarded as having had similar aims- getting her put (she believed) into a state mental institution.

> Dismissal of the suits was made because of appellant's continued and unyielding refusal to submit herself to any depositional interrogation or discovery whatsoever in relation to her claims. She ignored a number of notices which had been served upon her for that purpose. When the court thereupon entered an order directing her to appear upon another such notice, she presented herself at the deposition scene, but refused to answer any question except to state her name. To all other inquiries made of her, she merely responded that she was invoking her privilege against self-incrimination under the Fifth Amendment. The interrogation had sought to elicit information from her as to her version of the background, aspects and incidents on which she was predicating her claims.

> When motions were thereafter filed in both suits for orders requiring appellant to answer such questions or granting dismissal of her suits, the court accorded a full and patient hearing in the matter. Judge Burke explained to her the right of a defendant who has been subjected to a suit to require the plaintiff to submit to depositional discovery in relation to the claims asserted; advised her that if she wanted to use the shield of self-incrimination against any interrogation whatsoever regarding her claims, she would have to forego the right to prosecute the actions; and

-36-

informed her that if she was determined to adhere to her position, it would be necessary for him to dismiss the suits.

Appellant remained adamant and declared: 'So I will not waive, and I will not acquiesce and I will stand under the Fifth Amendment even if my case is dismissed. I will merely carry it to a higher court'. With the further specific inquiries by the court as to whether she might be willing to recede from her position 'if you were to appear for further deposition', and whether her refusal was intended to apply to both of the lawsuits, the situation was left with no room for any uncertainty or misunderstanding by appellant- and she makes no such contention here.

415 F.2d at 541.  The Ninth Circuit found that the district court did not abuse its discretion.  See 415

F.2d at 541.

The naked question therefore simply was whether a plaintiff can refuse to submit to any discovery whatsoever upon his lawsuit, by asserting a Fifth Amendment privilege against any interrogation of him, and then demand that he nevertheless be permitted to continue with the legal pursuit of his claim, no matter what prejudice or possible unequal protection there might be involved to the defendant from such a court acquiescence.

It is a little difficult to visualize how a possibility of self-incrimination could be involved in any mere relevant interrogation of appellant as to the background, aspects and incidents of her asserted claims, unless she had engaged in a matter of perjury as to the allegations of her complaints; but that question was not one which the court was called upon to consider. If, however, appellant could properly have had a fear of the possibility of exposure to some collateral or unrelated incrimination, she has received full protection against any such possibility from the court's complete honoring of the scope of the privilege asserted by her.

Her obtaining of this shield, however, could not provide a sword to her for achieving assertion of her claims against the defendants without having to conform to the processes necessary to orderly and equal forensic functioning. Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making federal court business flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales.

-37-

We would not have indulged in the extent of this expression except for a desire to reach through to appellant in her self-representation as to the course which she has chosen to take. She of course had the right to make that choice, but she must now accept the fact that the doors of the law are closed to any attempts by her to reassert her alleged claims.

415 F.2d at 541-42.

During Mata's deposition, the Defendant Officers asked him:

Q.    What psychological harm have you suffered as a result of having been charged in federal court with conspiracy to distribute methamphetamines?

A.    Once again, I'm not gonna answer that because this goes back to this whole thing.  My attorney specifically instructed me not to answer anything in regards to this.

Q.    Are you invoking your Fifth Amendment right against self-incrimination in response to my question?

A.    Yes, sir.

Q.    What, if anything, did you tell Dr. Steve Lund about the effect which the federal criminal felony drug charges had on you?

A.    Once again, I'm invoking my Fifth Amendment right on that.

Q.    What, if anything did you tell Mr. Castenell about the effect which the federal criminal felony drug charges had on you?

A.    Again, I plea the Fifth.

Q.    To what extent, if any did the filing of federal criminal felony drug charges aggravate your pre-existing post-traumatic stress disorder?

A.    Again, I plea the Fifth.

Mata Depo. at 86:10-87:3.  Castenell, Mata's therapist who treated him for post-traumatic stress disorder, testified: "Q.  Okay.  Would you agree with me, though that just the fact of being arrested for federal drug charges could produce a lot of anxiety and stress in a person?  A.  Yes, it can."

Castenell Depo. at 147:18-21.[6]

"There is no indication here, however, that [Mata] wishes to 'retreat[ ] under the cloak of the Fifth Amendment [to] gain an unequal advantage against the party he has chosen to sue.'" Chamberlin v. City of Albuquerque, 2003 WL 24130247, at *3 (citing Wehling v. Columbia Broad. Sys., 608 F.2d at 1088). "Nevertheless, while [Mata] has an absolute right not to reveal any potentially incriminating information, [Mata's] invocation of his right" may place the Defendant Officers at a disadvantage, because his federal indictment and his arrest may have affected Mata emotionally and thus this evidence may shed light on Mata's entitlement to emotional distress damages. Chamberlin v. City of Albuquerque, 2003 WL 24130247, at *3.

Unlike a criminal proceeding, the parties in this civil case are on a somewhat equal footing. To properly balance these competing interests, the Court should strive to accommodate Mata's Fifth-Amendment right, while ensuring that the Defendant Officers are not unduly disadvantaged. To balance these competing interests, the Court will allow the Defendant Officers to bring out at trial that Mata refused to answer questions. The Officer Defendant may ask Mata whether it is true that he refused to answer certain questions, whether it is true that he had an attorney present to give him advice on answering the questions, and whether it is true that, despite having a lawyer present, he chose not to answer the questions. The Court will not, however, allow the Defendant Officers to tell the jury that Mata invoked his Fifth-Amendment privilege when he refused to answer the questions. The Court believes that this sufficiently balances Mata's right to not reveal any potentially incriminating information while ensuring that the Defendant Officers are not unduly disadvantaged.

---

[6] On June 14, 2011, the Defendant Officers filed the Defendant Officers' Witness List. See Doc. 94. Castenell is listed as a witness by deposition. On June 15, 2011, Mata filed the Plaintiff's Witness List. See Doc. 98. He listed Castenell as a witness.

Cf. Chamberlin v. City of Albuquerque, 2003 WL 24130247, at *3 (balancing the competing interests and staying the litigation for a period of sixty days).  As the Court recognized in Chamberlin v. City of Albuquerque, "[a] number of courts acknowledge the court's power to dismiss even in the face of a party's proper assertion of his or her Fifth Amendment right."  2003 WL 24130247, at *3 (citations omitted).  If the Court can dismiss a plaintiff's case because he or she invokes the Fifth-Amendment privilege, and that is not considered an unconstitutional penalty for invoking the right, it would follow that a court in a civil case could use less drastic remedies to avoid unfairness to the defendant.  Allowing the Defendant Officers to bring out at trial that Mata refused to answer questions in his deposition but not mention the Fifth-Amendment right is a lesser included remedy than dismissal of a civil plaintiff's case.  It will protect as much as possible Mata's invocation of his constitutional rights, but will explain to the jury why the Defendant Officers do not have evidence or testimony on this aspect of the damages case.

**IT IS ORDERED** that (i) the Defendant Officers' Motion in Limine No. I: The Exclusion of Evidence at Trial Regarding Defendant Officers' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training, and Less Intrusive Alternatives, filed May 4,  2011 (Doc. 67), is granted in part and denied in part; and (ii) the Defendant Officers' Motion in Limine  No. II: Admissibility of Evidence of Plaintiff's Interactions with the Farmington Police Department, Other Arrests and Violent Encounters to Rebut His Claim for Damages, filed May 5, 2011 (Doc. 68), is granted in part and denied in part.  The Court will exclude evidence that the Defendant Officers did not follow standard operating procedures and police training, because this evidence is not relevant.  The Court will also exclude evidence that Rahn could have used less intrusive alternatives, because this evidence is not relevant.  The Court will not allow Mata to present evidence of specific incidents of Farmington Police Department officers' use of force,

internal-affairs complaints, or civil rights lawsuits in the context of his excessive force claims, because this evidence does not, as a matter of law, have a tendency to make the existence of facts of consequence to the determination of this claim more or less probable, but it will allow Mata to present limited testimony to provide a factual background for this incident at issue in this litigation. If, at trial, Mata chooses to pursue his claims for emotional distress and seeks damages for emotional distress, the Court will allow the Defendant Officers to ask about Mata's interactions with the FPD, his other arrests, and violent encounters in which he has been involved.  If, at trial, Mata chooses to pursue damages for emotional distress, the Court will also allow the Defendant Officers to ask whether Mata refused to answer certain questions in his deposition, but they may not refer to invocation of the Fifth-Amendment privilege.  Because the Court will not grant the Defendant Officers' motions in limine in their entirety, and for other reasons, it will not award the Defendants Officers attorneys fees and costs.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Santiago E. Juarez
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Luis E. Robles
Terri S. Beach
Robles, Rael & Anaya
Albuquerque, New Mexico

     *Attorneys for the Defendants*